# IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF ARKANSAS
## WESTERN DIVISION


CLINTON E. FAULKNER                                              PLAINTIFF


v.                              NO. 4:06CV00378 HDY


JO ANNE B. BARNHART,                                            DEFENDANT
Commissioner of the Social
Security Administration


## MEMORANDUM OPINION AND ORDER


The record reflects that in November of 2004, plaintiff Clinton E. Faulkner ("Faulkner") filed applications for disability insurance benefits and supplemental security income benefits pursuant to the provisions of the Social Security Act ("Act").  His applications were denied initially and upon reconsideration.  He next requested, and received, a de novo administrative hearing before an Administrative Law Judge ("ALJ").  In October of 2005, the ALJ issued a ruling adverse to Faulkner.  He appealed the ruling to the Appeals Council where the decision of the ALJ was affirmed.  The decision of the ALJ thus became the final decision of the Commissioner of the Social Security Administration ("Commissioner").  In March of 2006, Faulkner commenced this proceeding in which he challenged the final decision of the Commissioner.

The sole inquiry for the Court is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole.  See Prosch v. Apfel, 201 F.3d 1010 (8th Cir. 2000).  "Substantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusions."  See Id. at 1012.  The Court may not reverse the decision of the Commission merely because the evidence supports a different conclusion.  See Id.

In determining whether the Commissioner's findings are supported by substantial evidence on the record as a whole, it is helpful to first identify the findings.  The record reflects that the Commissioner made findings pursuant to the five step sequential evaluation process.[1]  At steps one through four, the Commissioner made the following findings:

(1) at step one, the Commissioner found that Faulkner has not engaged in substantial gainful activity since November 20, 2003, the alleged onset date;

(2) at step two, the Commissioner found that Faulkner is severely impaired as a result of "chronic ischemic heart disease" and "coronary artery disease," see Transcript at 19;

---

[1]

The five steps involve determining the following: "(1) whether the claimant is currently employed; (2) whether the claimant is severely impaired; (3) whether the impairment is, or is comparable to, a listed impairment; (4) whether the claimant can perform past relevant work; and, if not, (5) whether the claimant can perform any other kind of work."  See Cox v. Barnhart, 345 F.3d 606, 608 n.1 (8th Cir. 2003) [citing Bowen v. Yuckert, 482 U.S. 137 (1987)].

(3) at step three, the Commissioner found that Faulkner does not have an impairment, or combination of impairments, that meets or equals a listed impairment;

(4) the Commissioner next found that Faulkner has the residual functional capacity to perform sedentary work; and

(5) at step four, the Commissioner found that Faulkner cannot return to his past relevant work as a "dairy manager at a grocery store, yard maintenance worker, laborer, bartender, [or] electronics store manager."

See Transcript at 22.

At step five, the Commissioner was called upon to determine whether Faulkner can perform any other kind of work.  The Commissioner found that Faulkner was forty-seven years old on the alleged onset date and is therefore a younger individual, has at least a high school education and is able to communicate in English, and has a skilled work background.  Considering his age, education, work experience, and residual functional capacity, the Commissioner found that Faulkner has "acquired work skills from past relevant work that are transferable to other occupations with jobs existing in significant numbers in the national economy," see Transcript at 23, and "a finding of 'not disabled' is appropriate under the framework of Medical-Vocational Rule 201.22," see Transcript at 24.  On the basis of the foregoing findings, the Commissioner concluded that Faulkner is not disabled within the meaning of the Act.

Are the Commissioner's findings supported by substantial evidence on the record as a whole?  Faulkner thinks not and advances four reasons why.  He first maintains that the Commissioner failed to fully and fairly develop the record.  Faulkner specifically maintains that the record was not properly developed because the Commissioner made no attempt to obtain "treating source medical evidence addressing [Faulkner's] ability to perform work-related activities," see Document 11 at 11, and, as a result, the record contains no medical evidence supporting the finding that he can engage in sedentary work.

The Commissioner has an obligation to fully and fairly develop the record.  See Battles v. Shalala, 36 F.3d 43 (8th Cir. 1994).  "'There is no bright line test for determining when the [Commissioner] has … failed to develop the record.  The determination in each case must be made on a case by case basis.'"  See Id. [quoting Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1052 (6th Cir. 1983)].  In developing the record, the Commissioner must determine the claimant's residual functional capacity.  A claimant's residual functional capacity is simply an assessment of "the most a person can do despite that person's limitations."  See Brown v. Barnhart, 390 F.3d 535, 538-39 (8th Cir. 2004) [citing 20 C.F.R. 404.1545(a)(1)].  The assessment is made on the basis of all the relevant evidence in the record, "including medical records, observations of treating physicians and others, and [the] claimant's own descriptions of his limitations."  See Pearsall v. Massanari, 274 F.3d 1211, 1217 (8th Cir. 2001).

-4-

The record reflects that Faulkner filed his applications for benefits in November of 2004.  He represented in his applications that he spends "most of [his] time … confined to sitting on the couch reading or watching [television]."  See Transcript at 98. He additionally represented that he is unable to lift more than ten pounds.

In February of 2005, Dr. Garry Stewart ("Stewart") performed a consultative examination of Faulkner.  See Transcript at 182-188.  Stewart found, inter alia, that Faulkner has no limitation with regard to sitting and is only mildly limited in his ability to walk, stand, lift, and carry.

In March of 2005, an assessment of Faulkner's residual functional capacity was performed by a medical consultant and subsequently affirmed by Dr. Alice Davidson ("Davidson").  See Transcript at 189-199.  The findings of that assessment are as follows: (1) Faulkner can occasionally lift and/or carry fifty pounds, (2) he can frequently lift and/or carry twenty-five pounds, (3) he can stand and/or walk (with normal breaks) for a total of about six hours in an eight hour workday, and (4) he can sit (with normal breaks) for a total of about six hours in an eight hour workday.

In September of 2005, Faulkner testified at the administrative hearing.  See Transcript at 241-257.  With regard to his ability to sit, he testified as follows: "If I'm propped back in a relaxed position with something under my back, I can sit quite awhile if I'm leaning back on something."  See Transcript at 250.  With regard to his ability to stand and/or walk, he testified that he can stand and/or walk on a limited basis.

The Commissioner found that Faulkner has the residual functional capacity to perform sedentary work.[2]  Substantial evidence on the record as a whole supports the Commissioner's finding.

First, there is substantial evidence on the record as a whole to support the Commissioner's finding that Faulkner is capable of lifting at least ten pounds.  Although Stewart and Davidson both found that Faulkner is capable of lifting more than ten pounds-Davidson specifically finding that Faulkner can occasionally lift/carry fifty pounds-the Commissioner obviously credited Faulkner's representation in his applications that he can lift no more than ten pounds.

Second, there is substantial evidence on the record as a whole to support the Commissioner's finding that Faulkner is capable of sitting for prolonged periods of time. Stewart and Davidson both found that Faulkner has no limitation with regard to sitting, and he represented in his applications that he spends most of his time sitting on the couch reading or watching television.  Although he testified that he requires support for his back while sitting, there is no evidence that he cannot sit for prolonged periods of time with what appears to be minimal support for his back.

---

[2]

20 C.F.R. 404.1567(a) provides that "[s]edentary work involves lifting no more than [ten] pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools.  Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties.  Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met."

Third, there is substantial evidence on the record as a whole to support the Commissioner's finding that Faulkner can occasionally walk and/or stand.  Stewart and Davidson both found that Faulkner is only mildly limited in his ability to walk and/or stand, and he testified that he is capable of doing both on a limited basis.

Faulkner also maintains that a remand is warranted so that his treating physicians can be re-contacted and asked their opinions of his ability to perform sedentary work. The Commissioner is required to re-contact medical sources and order consultative examinations only if "the available evidence does not provide an adequate basis for determining the merits of the disability claim."  See Sultan v. Barnhart, 368 F.3d 857, 863 (8th Cir. 2004).  The Court will not order a remand because it was not necessary for the Commissioner to re-contact the medical sources.  The available evidence, e.g., the opinions of Stewart and Davidson, and portions of Faulkner's own representations and testimony, provides an adequate basis for determining the merits of this claim.

Given the foregoing, the Court finds that the Commissioner fully and fairly developed the record with regard to Faulkner's ability to perform sedentary work. Specifically, substantial evidence on the record as a whole supports the Commissioner's findings that Faulkner is capable of performing the lifting, sitting, and walking/standing requirements of sedentary work.  In addition, it was not necessary for the Commissioner to re-contact the medical sources because the available evidence provides an adequate basis for determining the merits of Faulkner's claim.

Faulkner advances a second reason why the Commissioner's findings are not supported by substantial evidence on the record as a whole. Faulkner maintains that the Commissioner erred at step two of the sequential evaluation process when Faulkner's obesity was not properly adjudged as an impairment and at step three when his obesity was not taken into account in "[evaluating] his cardiovascular impairment." See Document 11 at 14. He additionally maintains that his obesity was not properly considered in evaluating his residual functional capacity.

At step two of the sequential evaluation process, the Commissioner is obligated to identify the claimant's impairments and determine whether they are severe. An impairment is severe if it has "'more than a minimal effect on the claimant's ability to work.'" See Henderson v. Sullivan, 930 F.2d 19, 21 (8th Cir. 1992) [quoting Hudson v. Bowen, 870 F.2d 1392, 1396 (8th Cir. 1989)]. If the claimant's impairments are severe, the Commissioner is obligated at step three to determine whether, when considered individually and collectively with other impairments, they meet or equal a listed impairment. See Shontos v. Barnhart, 328 F.3d 418 (8th Cir. 2003). The determinations at steps two and three are medical determinations. See Bowen v. Yuckert, 482 U.S. 137 (1987) (step two); Cockerham v. Sullivan, 895 F.2d 492 (8th Cir. 1990) (step three). At step four, the Commissioner is obligated to determine whether the claimant can perform his past relevant work. In making that determination, the Commissioner must ascertain the claimant's residual functional capacity.

-8-

In turning to address the question of Faulkner's obesity, the Court notes as a preliminary matter that the record is not a model of clarity as to when he first raised his obesity as an impairment.  His initial complaints appear to have centered upon such things as his hypertension; diabetes; shortness of breath; pain in his back, arms, and legs; and a heart condition.  It may be because of the uncertainty surrounding when he first raised his obesity as an impairment that the record contains very little evidence touching on his obesity and the complications caused by it.

As the Court has discussed, Stewart performed a consultative examination of Faulkner in February of 2005.  See Transcript at 182-188.  Stewart found that Faulkner stood five feet, nine inches tall; weighed 235 pounds; and had a Body Mass Index ("BMI") of 34.77.  Stewart found Faulkner's limb function to be within normal limits, although Stewart did note that Faulkner's ability to squat and arise from a squatting position is "normal for [his] weight."  See Transcript at 186.  Stewart diagnosed Faulkner as suffering from, inter alia, "morbid obesity."  See Transcript at 187.

As the Court has also discussed, Davidson affirmed the results of a March of 2005 assessment of Faulkner's residual functional capacity.  See Transcript at 189-199.  The assessment failed to disclose any appreciable physical limitation caused by his weight.

The record also contains a disability report form apparently dated June of 2005.  See Transcript at 82-89.  It reflects that Faulkner stood five feet, nine inches tall and weighed 210 pounds at that time.

The ALJ conducted the administrative hearing in September of 2005.  Very little of the testimony centered upon Faulkner's obesity and the complications caused by it, although it is not impossible that the testimony about his hypertension and the pain in his back, arms, and legs was associated with his weight.  The only real testimony about his weight involved his representation that he had lost about twenty pounds while dieting in an attempt to control his diabetes.

At step two of the sequential evaluation process, the Commissioner acknowledged Stewart's findings and diagnosis with regard to Faulkner's obesity.  The Commissioner did not find Faulkner's obesity to be a severe impairment, that is, the Commissioner did not find that Faulkner's obesity has more than a minimal effect on his ability to work.  Substantial evidence on the record as a whole supports the Commissioner's finding.

First, the record contains no evidence that Faulkner's weight has any effect on his ability to work.  Although Stewart did note that Faulkner's ability to squat and arise from a squatting position is "normal for [his] weight," see Transcript at 186, that notation establishes little.  At most, the notation establishes that his ability to squat and arise from a squatting position is more restricted than that of a person of lesser weight; the notation does not establish that his obesity has more than a minimal effect on his ability to work.  Second, the record contains no evidence that the complications caused by his weight have any effect on his ability to work.  Last, Social Security Ruling ("SSR") 02-1p provides the following with regard to determining whether obesity is severe:

> There is no specific level of weight or BMI that equates with a "severe" or a "not severe" impairment.  Neither do descriptive terms for levels of obesity (e.g., "severe," "extreme," or "morbid" obesity) establish whether obesity is or is not a "severe" impairment for disability program purposes.  Rather, we will do an individualized assessment of the impact of obesity on an individual's functioning when deciding whether the impairment is severe.

See 2000 WL 628049 at 4.  Stewart's description of Faulkner's obesity as "morbid" is therefore not determinative; rather, whether his obesity is severe is made on the basis of an individualized assessment of the impact of his obesity on his functioning.  Although the Commissioner's assessment is less than extensive, the ultimate finding is supported by substantial evidence on the record as a whole.

At step three of the sequential evaluation process, the Commissioner found that Faulkner does not have an impairment, or combination of impairments, that meets or medically equals a listed impairment.  Substantial evidence on the record as a whole supports the Commissioner's finding.

Although it is true that obesity can increase the severity of an impairment, particularly a cardiovascular impairment, SSR 02-1p provides as follows:

> We will not make assumptions about the severity or functional effects of obesity combined with other impairments.  Obesity in combination with another impairment may or may not increase the severity or functional limitations of the other impairment.  We will evaluate each case based on the information in the case record.

See 2000 WL 628049 at 6.   In this instance, Faulkner has not shown that the Commissioner's finding is not supported by substantial evidence on the record as a whole, specifically, Faulkner has not shown that his impairment, singly and in combination, meets or equals a listed impairment.[3]

The Commissioner next found that Faulkner has the residual functional capacity to perform sedentary work.  Substantial evidence on the record as a whole supports the Commissioner's finding.

SSR 02-01p provides that obesity can cause "limitation of function" and its effects may not be obvious.  See 2000 WL 628049 at 6.  In this instance, however, there is no evidence that Faulkner's weight, or its complications, impact his exertional functions, i.e., his ability to sit, stand, walk, lift, carry, push, or pull, to such an extent that he is precluded from performing sedentary work.  There is also very little evidence that his weight, or its complications, impact his postural functions, i.e., his ability to climb, balance, stoop, or crouch, to such an extent that he is precluded from performing sedentary work.  Admittedly, the record does contain Stewart's notation that Faulkner's ability to squat and arise from a squatting position is "normal for [his] weight."  See Transcript at 186.  As the Court noted above, though, that notation establishes little.

---

[3]

In that regard, Faulkner bears the burden of showing that his impairment, singly and in combination, meets or equals a listed impairment.  See Brown v. Shalala, 15 F.3d 97 (8th Cir. 1994) (burden of proof shifts to Commissioner only at fifth and final step of the sequential evaluation process).

Given the foregoing, the Court finds that substantial evidence on the record as a whole supports the Commissioner's evaluation of Faulkner's obesity at step two of the sequential evaluation process, specifically, that his obesity is not a severe impairment. The Court also finds that substantial evidence on the record as a whole supports the Commissioner's finding that Faulkner's impairments, when considered in combination with his obesity, do not meet or equal a listed impairment. The Court additionally finds that substantial evidence on the record as a whole supports the Commissioner's finding that neither Faulkner's obesity, nor the complications arising therefrom, impact his residual functional capacity to such a degree that he is precluded from performing sedentary work.

Faulkner advances a third reason why the Commissioner's findings are not supported by substantial evidence on the record as a whole. Faulkner maintains that the combined effect of his impairments, both severe and non-severe, was not properly considered at step three of the sequential evaluation process. There is no merit to his assertion because the record establishes otherwise. Although the Commissioner's written decision is not a model of skillful draftsmanship, it does reflect that the Commissioner considered the "combination of [Faulkner's] impairments ..." <u>See</u> Transcript at 21. The Court is satisfied that the Commissioner adequately considered the combined effect of Faulkner's impairments, and substantial evidence on the record as a whole supports the Commissioner's finding.

Faulkner advances a fourth reason why the Commissioner's findings are not supported by substantial evidence on the record as a whole.  Faulkner re-visits the finding regarding his residual functional capacity and maintains that his complaints of pain were not properly considered.  He additionally maintains that conflicting findings were made with regard to the range of sedentary work he is capable of performing.  He specifically maintains that on one hand, the Commissioner found that Faulkner can perform sedentary work without any apparent limitation, and on another hand, found that his limitations "do not allow [him] to perform the full range of sedentary work ..." See Transcript at 24.  Faulkner maintains that the Commissioner offered no explanation for these seemingly inconsistent findings.

The Court will not re-visit Faulkner's challenge to the finding regarding his residual functional capacity, save the following comment.   The record contains substantial evidence on the record as a whole to support the Commissioner's finding that Faulkner is capable of performing sedentary work.  Stewart and Davidson's findings and conclusions, and portions of Faulkner's own representations and testimony, establish that he is capable of performing the lifting, sitting, and walking/standing requirements of sedentary work.  It is true that he complained of disabling pain, but the Commissioner could properly discount the intensity, duration, and limiting effects of Faulkner's pain because they are inconsistent with the evidence made relevant by the factors identified in Polaski v. Heckler, 739 F.2d 1320 (8th Cir. 1984).

With regard to the Commissioner's findings as to the range of sedentary work Faulkner can perform, the Court confesses an inability to reconcile the two findings.  The inability to do so, however, does not warrant a remand because there is substantial evidence on the record as a whole to support the more expansive finding, that is, substantial evidence on the record as a whole supports the proposition that Faulkner is capable of performing the lifting, sitting, and walking/standing requirements of sedentary work without limitation.[4]

In conclusion, substantial evidence on the record as a whole supports the Commissioner's findings, including the findings that Faulkner retains the residual functional capacity to perform sedentary work and that he can perform other work existing in significant numbers in the national economy.  The Commissioner could therefore find that Faulkner is not disabled within the meaning of the Act.  The complaint at bar is dismissed, and judgment will be entered for the Commissioner.

IT IS SO ORDERED this ___3___ day of July, 2007.

_____
UNITED STATES MAGISTRATE JUDGE

---

[4]

Faulkner also challenges a hypothetical question posed by the ALJ to a vocational expert.  Faulkner maintains that the ALJ asked a vocational expert a hypothetical question premised upon limitations caused by pain but eventually determined that the limiting effects of the pain were not as severe as Faulkner alleged.  The hypothetical question was not improper.